UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD STENBERG,

        Petitioner,

v.

                                              Case No. 12-cv-12126
                                              HON. MARK A. GOLDSMITH

FREDEANE ARTIS,[1]

        Respondent.

_____/

## OPINION AND ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Edward Stenberg, a Michigan prisoner, filed this habeas corpus proceeding under 28 U.S.C. § 2254.  Stenberg challenges his Oakland Circuit Court jury trial conviction of first-degree murder, Mich. Comp. Laws § 750.316, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and felony-firearm, Mich. Comp. Laws § 750.227b.  The court sentenced Stenberg to mandatory life imprisonment for the murder conviction and lesser terms for his other offenses.  The amended habeas petition raises six claims challenging Stenberg's convictions.  Because all the claims are without merit or procedurally defaulted, the amended petition will be denied.

### I.     BACKGROUND

Stenberg was charged with murdering his wife, Laura Stenberg.  The evidence produced at trial against Stenberg was compelling: Stenberg previously assaulted and threatened to kill his wife, the victim's son provided eyewitness testimony including hearing the fatal shot while

---

[1] The Court substitutes the Warden of the Thumb Correctional Facility, Fredeane Artis, where Stenberg is currently incarcerated, as Respondent. See Habeas Rule 2(a), 28 U.S.C. § 2254.

Stenberg was the only person inside the house with the bound victim, and Stenberg fled the state and made oblique confessions to multiple witnesses after the crime.

Scott Zimmer testified at trial that he was Stenberg's friend.  The two men spoke on almost a daily basis.  Zimmer testified that Stenberg frequently "used to joke about killing his wife." (ECF No. 10-10, PageID.795-807.)

Robert Edwards testified that he lived in Waterford Township and lived a few houses down the street from the Stenberg house.  In September of 2005, Laura Stenberg came to his door with blood visible on her head and shirt.  Laura was shaking and told Edwards that Stenberg had tried to kill her by beating her with a blackjack and smothering her with a pillow.  Stenberg had even checked her pulse to see if she was still alive. Laura made a call on Edwards' phone and then left. Edwards later saw police at the Stenberg house and spoke with an officer. (Id. PageID.785-94.)

Sky McCann testified that Jason Brindley, the victim's son, was her boyfriend and father of her child.  Around 8:30 a.m. on September 7, 2007, the morning of the murder, McCann called the victim.  Stenberg answered the phone and said that Laura could not come to the phone because she had "nodded out on pills."  (Id. PageID.920-24.)

Jason Brindley, the victim's 29-year-old son, testified that he lived with his mother and Stenberg.  At about 10:30 a.m. that morning, Brindley unexpectedly returned home after his contracting work had been cancelled. Stenberg confronted Brindley when he came inside the house.  He asked Brindley why he was home early, and he requested that Brindley respect his and his mother's privacy.  After Brindley headed for his bedroom in the basement, he heard his mother hysterically scream for help.  Brindley ran to his mother's bedroom where he saw her lying face down on the bed with her legs bound with rope and duct tape and her hands handcuffed behind her back.  Stenberg was standing over her, holding her down with what appeared to be a hand-sized

2

black weapon.  Brindley fled the house while Stenberg chased him saying, "let's talk about this." Brindley heard a gunshot after he ran out of the house.  He ran to a neighbor's house and knocked on the door to ask for help.  (ECF No. 10-9, PageID.617-31.)  Neighbor Mildred Roberson corroborated hearing a gunshot and hearing Brindley knock on her door. Roberson did not answer because she did not want to get involved.  (ECF No. 10-10, PageID.748-51.)

After trying unsuccessfully to get help from neighbors, Brindley saw Stenberg running from the house to his truck.  Brindley threw a brick at the truck and shattered a window as Stenberg sped away.  Brindley ran back inside the house and found his mother on the floor of the bedroom, still bound.  He cut the rope from his mother's ankles, grabbed a rifle from under the bed, and ran outside.  Realizing he was holding a weapon, Brindley put the rifle back in the house, and then he then ran back outside and stood in the middle of the road to flag down a vehicle. (ECF No. 10-9, PageID.636-41.)

Kathleen Moloney testified she was driving on Pontiac Lake Road at around 10:15-10:30 a.m. on September 7, 2007.  She saw a young man running from the middle of a yard, waving his hands.  Moloney stopped, and the man told her that his father shot his mother, and he thought she was dead.  Moloney called 911.  (Id. PageID.563-67.)  When emergency responders arrived, Brindley told them what happened and told them which way Stenberg fled.  (Id. PageID.636-41.)

Paramedic Jeffrey Finkbeiner arrived at the scene at 10:44 a.m.  The victim was on the floor of a bedroom with a gunshot wound to the back of the head, handcuffs on her wrists, and rope and duct tape around her ankles.  The victim had no pulse and was barely breathing.  (Id. PageID.731-37.)  Rope consistent with that used to bind the victim was found in Stenberg's home office.  (ECF No. 10-10, PageID.943-58.)

3

Scott Zimmer testified that Stenberg arrived at his house around 11:30 a.m. on the morning of the murder.  Stenberg had roughed-up knuckles and claimed he had gotten into a fight with Brindley.  Zimmer later told police that Stenberg told him that he had gotten into a fight with his wife, and that Brindley tried to break it up.  (Id. PageID.795-807.)  Police found Stenberg's truck near Zimmer's house. (Id. PageID.949-50.)

The medical examiner testified that the victim died from a contact gunshot wound to the head from a .22 caliber handgun placed behind her right ear.  The gunshot wound was not caused by a rifle but by a small caliber handgun.  The medical examiner also noted that the victim had suffered a bruise and scrape on her cheek and bruising on both wrists consistent with handcuffs. (ECF No. 10-9, PageID.542-53.)

United States Deputy Marshal Barry Golden testified that on September 22, 2007, he located Stenberg and a woman he appeared to be travelling with at a rest stop in Florida.  When another officer directed the woman to be apprehended along with Stenberg,  Stenberg spontaneously stated, "That lady is not involved. She knows nothing about me killing my wife. She just gave me a ride."  Offices found multiple weapons including a .22 caliber revolver with bullets, knives, clothing, prescription medication, and condoms in Stenberg's possession.  The revolver was not identified as the murder weapon.  (Id. PageID.584-606.)

Multiple witnesses testified at trial that as Stenberg entered the courtroom for his preliminary examination hearing, he made a gun motion with his hand toward Brindley's girlfriend, Sky McCann, and said, "F--- you, you're next."  (ECF No. 10-10, PageID.835-40, 653-55, 924.)

A recording of a phone conversation Stenberg had with his brother-in-law, Jim Rowe, while he was in jail in Florida was played for the jury.  Stenberg said to Rowe, "It just got to the

point where I couldn't put up with her anymore."  When Rowe mentioned his other sister was upset that she did not have an opportunity to help Stenberg with his problems with Laura before it got this far, Stenberg replied, "I did it myself."  Finally, after Rowe remarked, "I'm glad you shot that bitch and killed her, if you did,"  Stenberg responded, "Yep, it was just a matter of time."  (Id. PageID.963-69.)

Following arguments and instructions, the jury found Stenberg guilty of the charged offenses.

After he was sentenced, Stenberg filed a direct appeal. His appellate counsel filed a brief on appeal that raised five claims:

> I. The trial court abused its discretion in admitting inflammatory evidence of a prior assault and in finding the complainant's statements to be admissible as "excited utterances"; the trial court denied defendant his right of confrontation by admitting the complainant's testimonial statements.
>
> II. Defendant was denied a fair trial by the admission of irrelevant evidence of an alleged threat that was highly inflammatory and had no probative value.
>
> III. The extensive, highly prejudicial pretrial publicity created a presumption of prejudice that denied defendant his Sixth Amendment right to a fair trial by a panel of impartial, "indifferent" jurors; trial counsel's failure to pursue a motion for change of venue denied defendant his right to effective assistance of counsel.
>
> IV. Defendant was denied a fair trial by the introduction of evidence seized at the time of his arrest that was totally unconnected to the instant offense and highly inflammatory; counsel was ineffective for failing to object.
>
> Stenberg also filed a supplemental pro se brief that raised four additional claims:
>
> I. The trial court abused its discretion by denying the defendant's co-counsel motion without having read it. The defendant was denied his VI and XIV Amendment rights.
>
> II. The defendant's VI amendment rights were violated by ineffective assistance of counsel and abuse of discretion by the trial court.
>
> III. Defendant was denied effective assistance of counsel by his attorney's failure to attack the credibility of a witness and present a defense.

5

IV. A <u>Walker</u> hearing should have preceded the introduction of a recorded call from the St. Lucie County Jail.

The Michigan Court of Appeals affirmed in an unpublished opinion.  <u>People v. Stenberg</u>, No. 290918, 2010 WL 3984639 (Mich. Ct. App. Oct. 12, 2010).  Stenberg appealed to the Michigan Supreme Court, raising the same claims, but his application for leave to appeal was denied by form order.  <u>People v. Stenberg</u>, 796 N.W.2d 50 (Mich. 2011) (Table).

Stenberg thereafter filed his federal habeas petition, and the Court stayed the case so that he could return to the state court and exhaust additional claims.  (ECF No. 11.)

On April 25, 2012, about a week after he submitted his federal habeas petition, Stenberg filed a motion for relief from judgment in the trial court, raising a single claim of ineffective assistance of trial counsel that contained numerous sub-claims:

> I. The defendant's court appointed attorney failed to provide effective assistance of counsel: (1) counsel did not visit defendant frequently enough in jail, (2) counsel did not review the police report with defendant, (3) counsel failed to review a list of items prepared by defendant, (4) counsel refused to arrange for a polygraph exam, (5) counsel failed to file a motion for discovery, (6) counsel failed to request a pretrial hearing regarding Golden's testimony, (7) counsel failed to call witness to rebut Golden's testimony, (8) counsel failed to obtain video of Golden's interview with Stenberg, (9) counsel failed to cross-examine witnesses adequately based on information in police report, (10) counsel failed to investigate Edward's testimony regarding victim's prior statement, (11) counsel failed to request a hearing on the admissibility of McCann, Barnes, and Aumann's testimony, (12) counsel failed to adequately cross-examine Roberson regarding possible alternate shooter, (13) counsel inadequately cross-examined Zimmer, (14) counsel failed to admit documents to show that Brindley was biased, (15) counsel inadequately addressed Brindley's credibility during closing argument, (16) counsel inadequately cross-examined Brindley, (17) counsel failed to object to the prosecutor's comments during closing argument, (18) counsel erroneously conceded during closing argument that defendant previously assaulted the victim, and (19) counsel was ineffective for failing to object to admission of telephone call made by defendant while he was withdrawing from medication.

(ECF No. 20-18, PageID.3332–3342.)

The trial court apparently took no action on the motion for approximately nine years.  On May 19, 2021, the trial court issues an opinion and order denying the motion for relief from judgment.  (ECF No. 20-19.)  The court did not address the merits of Stenberg's claim.  Instead, the court found that review of the claim was procedurally barred under Michigan Court Rule 6.508(D)(3), concluding, "[d]efendant has failed to satisfy the mandatory requirements of good cause and actual prejudice."  (ECF No. 20-19, PageID.3401-03.)

Stenberg appealed, and the Michigan Court of Appeals denied leave to appeal because Stenberg failed to demonstrate that the trial court erred in denying the motion for relief from judgment.  (ECF No. 20-20, PageID.3404.)  The Michigan Supreme Court denied leave to appeal with citation to Michigan Court Rule 6.508(D).  (ECF No. 20-21, PageID.3487.)

Stenberg then filed his amended petition, raising the following six claims:

I. The trial court abused its discretion in admitting inflammatory evidence of a prior assault and in finding the complainant's statements to be admissible as excited utterances; Petitioner was denied his right to confrontation by admitting the complainant's testimonial statements. U.S. Const. Ams. VI, XIV.

II. Over trial counsel's objection, the prosecutor was allowed to admit 404b evidence from 3 witnesses accusing Petitioner of threatening Sky McCann in the courtroom. Sky McCann, the girlfriend of the victim's son, accused the Petitioner of making a gun sign with his cuffed hands while entering the courtroom and mouthing the words "fuck you, you're next". The prosecutor offered the evidence under MCR 404b.

III. Ineffective assistance of counsel for failure to request change in venue. This was highly publicized crime and trial with political overtones in regards to the person selected to prosecute.

IV. Ineffective assistance of counsel for failure to object to the admission of irrelevant evidence. Items found on Petitioner during his arrest in Florida including .9mm gun, knives, medications and condoms were irrelevant to the case but allowed to be admitted into evidence at the trial.

V. Ineffective assistance of trial counsel with 19 specific instances. Petitioner claims several specific instances of ineffectiveness that are further covered and argued in the attached motion in support of application.

VI. Failure of court to properly advise Petitioner on standby counsel. Petitioner motioned the court to serve as co-counsel and the court denied the motion by stating there was no authority for allowing this type of highbred representation. Petitioner was told he could either represent himself or be represented by counsel but could not serve as co-counsel. The court failed to advise Petitioner that he could represent himself with the assistant of stand-by counsel; therefore, petitioner was forced into accepting ineffective appointed counsel.

(ECF No. 14, PageID.1597-98.)

## II.    ANALYSIS

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003), quoting Williams v. Taylor, 529 U.S. 362, 405–406 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) quoting Williams, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme

8

malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103 (internal quotation omitted).

### A. Edwards's Testimony

Stenberg first claims that the trial court erred in admitting Edwards's testimony that the victim came to his house in 2005 and told him that Stenberg had just tried to kill her. Stenberg argues that the hearsay statement was improperly admitted as an excited utterance and violated his rights under the Confrontation Clause.

On direct review, apart from asserting a violation of the Confrontation Clause, Stenberg also asserted that the testimony was inadmissible under Michigan Rules of Evidence 404(b) and 803(2) and Michigan Compiled Law § 768.27b. The Michigan Court of Appeals found that none of those evidentiary rules were violated. Stenberg, 2010 WL 3984639, at *1–2. That decision is not reviewable here. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"). Nor may habeas relief be based on an alleged violation of state law. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68 (1992).

The cognizable aspect of this claim is Stenberg's argument that admission of the challenged testimony violated his rights under the Confrontation Clause. The Michigan Court of Appeals rejected this claim on the merits, finding that Stenberg's confrontation rights were not implicated because the statement was not testimonial. Stenberg, 2010 WL 3984639, at *3.

Under the Confrontation Clause, the accused has the right "to be confronted with the witnesses against him." U.S. Const., Am. VI; Pointer v. Texas, 380 U.S. 400, 403-405 (1965). The Clause prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 59 (2004). In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court held that the Confrontation Clause applied only to testimonial hearsay and not to non-testimonial hearsay. Id. at 823-824; see also Whorton v. Bockting, 549 U.S. 406, 420 (2007); Giles v. California, 554 U.S. 353, 376 (2008).

The Supreme Court defined the archetypical testimonial statement as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact" such as a "formal statement to government officers" made by an "accuser." Davis, 547 U.S. at 824 (quoting Crawford, 541 U.S. at 51). A statement made to the police with the primary purpose of establishing past events potentially relevant to later criminal prosecution is testimonial, whereas a statement made to police with the primary purpose of addressing an on-going emergency is not. Davis, 547 U.S. at 822.

In contrast to testimonial statements, the Supreme Court explained in Giles, "[s]tatements to friends and neighbors about abuse and intimidation, and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules," because they are not testimonial within the meaning of the Confrontation Clause. 554 U.S. at 376; see also Crawford, 541 U.S. at 51 (stating that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not").

The record evidence here indicates that the victim's statement to Edwards was not testimonial. Edwards testified that in September of 2005, his neighbor Laura Stenberg knocked

10

on his door.  Laura would not maintain eye contact with Edwards and looked disheveled and in shock.  Edwards asked her what was wrong, but Laura would not answer and just asked to use the phone.  After she made a call, they had a conversation.  Laura told Edwards that her husband had tried to kill her, that he had beaten her in the head with a blackjack, that he had tried to suffocate her with a pillow, and he had used his two fingers on her carotid artery to see if there was still a pulse.  Laura showed Edwards where Stenberg had hit her with the blackjack, and he saw that it was black and blue and saw blood on her blouse.  Laura stayed at Edwards' house for about twenty minutes.  After she left, Edwards saw the police come to the Stenberg house.  The police later came to Edwards' house and took his statement.  (ECF No. 10-10, PageID.785-94.)

The context in which the statement was made shows that it was clearly not testimonial.  The statement was not a formal one made to a police officer but to a neighbor in the immediate aftermath of a violent assault.  Consistent with Giles, Crawford, and Davis, the victim's statement to her neighbor about being having just been assaulted by Stenberg was not testimonial and was not subject to the Confrontation Clause.  The state court decision rejecting the claim was therefore consistent with clearly established Supreme Court law.

### B.  Testimony of Threats

Stenberg's second claim asserts that his trial was rendered unfair by admission of testimony that he threatened a witness with a hand gesture simulating a gun accompanied by a threat that she would be "next."

Stenberg argued on direct appeal that the admission of the evidence violated Rule 404(b).  The Michigan Court of Appeals found that Rule 404(b) was inapplicable, and that the testimony was properly admitted under Rule 801(d)(2) as an admission by a party.  The state court found that "[d]efendant's threats could have been interpreted as an admission that he previously shot

someone, namely Laura." Stenberg, 2010 WL 3984639, at *4. As with the previous issue, the determination by the state court that the testimony was properly admitted as a matter of state law is not reviewable by this Court, and an error in the application of a state rule cannot, in any event, provide the basis for granting habeas relief. Bradshaw, supra.

To rise to the level of a federal constitutional violation, a state court evidentiary ruling must be "so fundamentally unfair as to violate the petitioner's due process rights." Coleman v. Mitchell, 244 F.3d 533, 542 (6th Cir. 2001). This is "an extremely high standard." Baze v. Parker, 371 F.3d 310, 318 (6th Cir. 2004); see also Wilson v. Sheldon, 874 F.3d 470, 475 (6th Cir. 2017). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (alteration in original) (quoting Montana v. Egelhoff, 518 U.S. 37, 43 (1996)). It is a habeas petitioner's burden to demonstrate that a state court's ruling "contradicts Supreme Court precedent and violates a fundamental right." See Bey v. Bagley, 500 F.3d 514, 521 (6th Cir. 2007).

The admission of testimony that Stenberg threatened a witness at the preliminary examination and implicitly admitted that he shot the victim did not render his trial fundamentally unfair. The record indicates that prior to jury selection, defense counsel asked the court to prohibit any reference to the alleged threat made by Stenberg during the preliminary examination. Stenberg purportedly made a gun with his finger, pointed his finger at Skye McMann, and said something to the effect of, "F--- you. You're next." A police report was made about the incident. The prosecutor explained that the evidence was relevant because Stenberg said, "you're next," implying there had been "a first." The court took the matter under advisement. (ECF No. 10-8, PageID.254-58.)

12

Later during trial Kim Aumann testified she was at the Waterford District Court during defendant's preliminary examination.  Aumann did not know either party but went to the district court to support the victim's family.  Aumann was sitting behind Brindley and his girlfriend Sky McCann. Aumann saw Stenberg walk into the courtroom, make a gun motion with his hand, look at McCann and say, "F--- you, you're next."  Aumann admitted that she reviewed videotape footage of Stenberg walking into the preliminary exam, and she did not see defendant make the gesture she described. (ECF No. 10-10, PageID.835-40.)  Deborah Barnes corroborated Aumann's account of seeing Stenberg make the gesture. (Id. PageID.853-55.)  Sky McCann likewise testified to the threat occurring at the preliminary examination.  (Id. PageID.924.)  Video footage from the preliminary examination was played for the jury.  (Id. PageID.1024.)

Stenberg asserts that the testimony rendered his trial fundamentally unfair because it was highly prejudicial and had no relevance to the charged offense.  Contrary to his argument, however, evidence that a defendant threatened a witness is generally admissible under Michigan law.  See People v. Sholl, 453 Mich. 730, 740 (1996) (stating that evidence that the defendant threatened a witness is admissible to prove that the defendant was conscious of his or her guilt).  Moreover, the statement accompanying the gesture, "you're next," implied that Stenberg committed the prior shooting.  Admission of the statement did not render his trial fundamentally unfair.  See, e.g., Cotton v. McKee, No. 07-10291, 2008 WL 4647691, *5 (E.D. Mich. Oct. 20, 2008) (denying habeas relief on claim that prosecutor improperly solicited evidence that petitioner had threatened to kill a witness because no clearly established Supreme Court law holds that due process is violated by such evidence); see also United States v. Blackwell, 459 F.3d 739, 768 (6th Cir. 2006). Habeas relief is not warranted on this claim.

### C. Pretrial Publicity and Ineffective Assistance

Stenberg asserts in his third claim that extensive pretrial publicity violated his Sixth Amendment right to an impartial jury. He also asserts that his trial counsel was ineffective for failing to file a motion for change of venue.

After reciting the federal standard governing ineffective assistance of counsel claims, the Michigan Court of Appeals rejected the claim as follows:

> Defendant argues that his trial counsel's failure to request a change in venue constituted ineffective assistance. We disagree. Defendant did not preserve this issue for appeal because he did not move for a new trial or an evidentiary hearing. People v. Ginther, 390 Mich. 436, 443 (1973).
>
> The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. People v. LeBlanc, 465 Mich. 575, 579 (2002). The court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. Id. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. Id. Unpreserved issues of ineffective assistance of counsel are reviewed for errors apparent on the record. People v. Rodriguez, 251 Mich. App. 10, 38 (2002). "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." People v. Davis, 250 Mich. App. 357, 368 (2002).
>
> Defendants have the guaranteed right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984); People v. Aceval, 282 Mich. App. 379, 386 (2009). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. LeBlanc, 465 Mich. at 578. Generally, to establish an ineffective assistance of counsel claim, a defendant must show that (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); People v. Davenport, 280 Mich. App. 464, 468 (2008). However, such performance must be measured without the benefit of hindsight. Bell, 535 U.S. at 698; People v. La Vearn, 448 Mich. 207, 216 (1995).
>
> Defendant first argues that because of the highly prejudicial pretrial publicity, his defense counsel should have moved for a change in venue. Criminal defendants, generally, must be tried in the county where the crime was committed. Unger, 278 Mich. App. at 253. However, if pretrial media coverage and community interest

14

cause actual prejudice against defendant, then a change in venue is appropriate in order to safeguard defendant's right to a trial by a panel of impartial, indifferent jurors. See id. at 254.

Defendant failed to show how the community, let alone a single juror, was actually biased against defendant. Therefore, the performance of his attorney did not fall "below an objective standard of reasonableness." Also, to the extent that defendant argues that the trial court erred by not changing the venue on its own initiative, this argument is without merit. Trial courts are under no obligation to change sua sponte the venue of a criminal defendant's trial to another county. Unger, 278 Mich. App. at 254 n. 12. In fact, MCL 762.7 clearly states that a trial court may change venue in a criminal case only "upon good cause shown by either party." Id.

Stenberg, 2010 WL 3984639, at *4-5.

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to a trial by "an impartial jury[.]" U.S. Const. amend. VI. This right is "applicable to the States through the Due Process Clause of the Fourteenth Amendment." Parker v. Gladden, 385 U.S. 363, 364 (1966). "The failure to accord an accused a fair hearing violates even the minimal standards of due process," Irvin v. Dowd, 366 U.S. 717, 722 (1961), and "adverse pretrial publicity can create such a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed." Patton v. Yount, 467 U.S. 1025, 1031 (1984) (explaining the holding in Irwin).

"The category of cases where prejudice has been presumed in the face of juror attestation to the contrary is extremely narrow." DeLisle v. Rivers, 161 F.3d 370, 382 (6th Cir. 1998). The Sixth Circuit Court of Appeals has

characterized presumptive prejudice as a "circus-like atmosphere" that "pervades both the courthouse and surrounding community." Simple exposure of jurors to pretrial publicity "does not presumptively establish that the defendant was denied a fair trial."

United States v. Poulsen, 655 F.3d 492, 507 (6th Cir. 2011) (internal and end citations omitted).

When the partiality of an individual juror is at issue, the question "is plainly one of historical fact:

15

did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence and should the juror's protestation of impartiality have been believed." Patton, 467 U.S. at 1036.

Stenberg fails to demonstrate that the extent of pretrial publicity here created a presumption of prejudice. S tenberg proffered no evidence to the state courts on direct appeal that there was a "circus-like atmosphere" surrounding his trial.  Indeed, during the first day of jury selection the trial court asked the venire, "Do any of you know anything about this case at all?"  The members of the venire called to the jury box for voir dire all nodded their heads "no."  (ECF No. 10-8, PageID.300.)  After some strikes were exercised, a new member of the venire selected for voir dire indicated that she had read something in the newspaper about the case and that she lived close to the location of the shooting.  The prospective juror, however, could not remember if she saw any television reports about the incident.  (Id. PageID.388-90.)  A peremptory challenge was exercised to strike that juror. Jury selection continued the next morning.  A new prospective juror stated, "I was watching the news last night and I did hear about this case.  Nor (sic) in any way I would get (inaudible) influence at all . . . . I just heard about it."  (ECF No. 10-9, PageID.487.)

Accordingly, the record demonstrates that only two of the many prospective jurors who were subjected to voir dire had even heard about Stenberg's case.  The two jurors who had heard about the case said it would not impact their ability to serve on the jury.  That is a far cry from a circus-like atmosphere.  Given this record, the state court reasonably rejected his claim that counsel was ineffective for failing to file a motion to change the venue of the trial.

16

### D.  Admission of Evidence from Florida Arrest and Ineffective Assistance

Stenberg's next claim asserts that he was denied a fair trial by admission of items seized

from him during his arrest in Florida that were unrelated to the offense and highly inflammatory.

He also asserts that his counsel was ineffective for failing to object to admission of the evidence.

The Michigan Court of Appeals denied the claim on the merits as follows:

Defendant argues that he was denied a fair trial when the trial court admitted evidence of him possessing other weapons and condoms at the time he was arrested. We disagree. Unpreserved constitutional and nonconstitutional issues are reviewed for plain error affecting substantial rights. People v. Carines, 460 Mich. 750, 774 (1999).

When defendant was arrested in Florida, the following items were found in his possession: a loaded 9 mm stainless steel handgun; a black stun gun; several knifes/switchblades; a bag of condoms; some clothing; a loaded, small, black .22 handgun; and some medication. Defendant maintains that the only admissible item was the .22 handgun. Relevant evidence is admissible and irrelevant evidence is not admissible. MRE 402.

Relevant evidence is evidence that has any tendency to make the existence of any material fact or issue at trial more or less probable than it would be without the evidence. MRE 401; Knox, 469 Mich. at 509. The weapons were relevant to show that defendant planned to escape after shooting Laura. Jason Brindley, Laura's son, testified that Laura owned a 9 mm handgun, which was never found in the house at the time of her murder. Thus, the fact that defendant had a 9 mm in his possession makes it more probable than without the evidence that he took the 9 mm from the home. Likewise, Jason testified that he recognized at least two of the knives that defendant had in his possession as knives that used to be present in the house. The fact that defendant was found in Florida with these weapons, that were known to exist in the Waterford home, indicates that defendant either premeditated this murder and escape by prepacking these weapons or, in his spontaneous decision to escape after the shooting, consciously decided to take the weapons with him to assist him in his flight. Either way, the evidence was relevant to show that defendant had a guilty state of mind. See Unger, 278 Mich. App. at 226 (evidence that the defendant had packed his belongings in a car before the murder victim's body was found can be considered by a jury as evidence of a guilty state of mind). Likewise, the fact that defendant packed his medications from the Waterford home also shows that he planned to flee the area and, consequently, was admissible. The stun gun was also admissible since Jason testified that he saw defendant with a small, black weapon-like object in his hand when defendant had Laura tied, bound, and handcuffed on the bed. Jason was unable to determine what kind of weapon it was; thus, it could have been the stun gun, which was described as "black." Accordingly,

17

> the stun gun was properly admitted. Last, any prejudice introduced by the introduction of the third knife, which no one was able to link to the Waterford house, would have been negligible given the fact that the two knifes, two handguns, and one stun gun were properly admitted.
>
> The relevance of the condoms is less clear, but defendant failed to show how their introduction injected any unfair prejudice into the trial. Accordingly, even if the condoms were irrelevant and not admissible, defendant cannot show how any substantial right was affected, and his evidentiary claim fails.

Stenberg, 2010 WL 3984639, at *5–6.

With respect to the admission of the weapons, medicine, and clothing, the state court found that they were properly admitted as evidence of Stenberg's guilty state of mind and flight. The state court finding that these items were properly admitted under state law is binding here as discussed in the preceding sections. Counsel was not ineffective for failing to make a meritless objection. Tackett v. Trierweiler, 956 F.3d 358, 375 (6th Cir. 2020).

The one item that was arguably improperly admitted was the package of condoms. The state court found, however, that Stenberg "failed to show how their introduction injected any unfair prejudice into the trial." Stenberg, 2010 WL 3984639, at *6. Under established Supreme Court law, even if a defendant shows that his counsel performed deficiently, a defendant must also demonstrate prejudice - that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Furthermore, under AEDPA, a habeas petitioner must show that the state court decision rejecting his claim was "'so lacking in justification' that it amounts to 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Hendrix v. Palmer, 893 F.3d 906, 921 (6th Cir. 2018) (quoting Harrington, 562 U.S. at 103).

18

Given the weighty evidence of Stenberg's guilt presented at trial, and given the relatively minor prejudicial impact of admission of a package of condoms, the determination that Stenberg failed to demonstrate prejudice was reasonable. The claim is without merit.

### E. Procedural Defaulted Claims

Stenberg's fifth claim is comprised of numerous allegations of ineffective assistance of trial counsel that he raised in his motion for relief from judgment. Respondent asserts that the claim is procedurally barred from federal habeas review because the trial court found that Petitioner failed to demonstrate good cause and actual prejudice under Michigan Court Rule 6.508(D)(3) for failing to raise the claims on direct appeal.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." Trest v. Cain, 522 U.S. 87, 89 (1997). Pursuant to the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). "[W]here a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." Sheffield v. Burt, 731 F. App'x 438, 441 (6th Cir. 2018).

For a claim to be defaulted, the habeas petitioner must have failed to comply with a state procedural rule, the rule must have actually been relied upon by the state courts, and the procedural rule must be "an independent and adequate state ground to foreclose review of the federal constitutional claim." White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2005). "To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look to the last reasoned state court decision disposing of the claim." Henderson v. Palmer, 730 F.3d 554, 560 (6th Cir. 2013) (punctuation modified).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless a petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or if a petitioner can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner fails to show cause for the procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). A petitioner may also overcome a procedural bar by proving actual innocence. Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298, 324 (1995).

Michigan Court Rule 6.508(D)(3), the rule at issue here, provides that—absent a showing of good cause for the defendant's failure to previously raise the new claims and actual prejudice— a court may not grant post-conviction relief to a defendant if the defendant's motion for relief from judgment alleges grounds that could have been raised on direct appeal. When a Michigan Court relies on this procedural rule as a ground for denying post-conviction relief, it bases its decision on a state procedural ground independent of federal law and adequate to bar subsequent federal habeas review. See Jackson v. Lafler, 453 F. App'x 620, 623 n.1 (6th Cir. 2011); Ivory v. Jackson, 509 F.3d 284, 292-293 (6th Cir. 2007); Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005).

The state trial court here invoked this rule by finding that Stenberg raised his ineffective assistance of counsel claim for the first time in his motion for relief from judgment, and that he did not offer any explanation—such as raising a claim of ineffective assistance of appellate counsel—for his failure to raise the claim on direct appeal. The court also determined that Stenberg failed to demonstrate actual prejudice. (ECF No. 20-19, PageID.3401-03.)[2]

---

[2] The Court "looks through" the unexplained orders of the Michigan Court of Appeals and the Michigan Supreme Court to the trial court's order to determine the basis for decision. See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

Review of Stenberg's post-conviction ineffective assistance of counsel claim is therefore barred unless (i) Petitioner can show cause for noncompliance with the procedural rule and actual prejudice resulting from the alleged constitutional violation, or (ii) he establishes actual innocence. Coleman, 501 U.S. at 750–751; Nields v. Bradshaw, 482 F.3d 442, 450 (6th Cir. 2007).

Stenberg does not acknowledge that his claim is defaulted and therefore does not attempt to demonstrate cause and prejudice to excuse it.   The only obvious candidate for a cause argument—ineffective assistance of appellate counsel for failing to raise the claim on direct review—is not available to Stenberg.   When a habeas petitioner claims ineffective assistance of counsel as cause for a procedural default, the allegation of ineffectiveness is a separate claim which must itself be exhausted in state court according to the normal procedures.   Edwards v. Carpenter, 529 U.S. 446, 452 (2000); Murray, 477 U.S. at 489 ("The exhaustion doctrine…generally requires that a claim of ineffective assistance of counsel be presented to state courts before it may be used to establish cause for a procedural default.").   According to Edwards, the failure to exhaust the ineffectiveness claim will itself constitute a procedural default of the cause argument and prevents a federal court from hearing it.   529 U.S. at 452.   Stenberg did not exhaust a claim that his appellate counsel was ineffective for failing to raise his fifth habeas claim on direct appeal, and therefore he cannot demonstrate cause to excuse his default.

Stenberg also cannot demonstrate that the failure to consider his claim would result in a fundamental miscarriage of justice.   The exception under which a federal court may review a petitioner's procedurally defaulted claims if the failure to do so would result in a fundamental miscarriage of justice requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.   Murray, 477 U.S. at 495–496.   Actual innocence means factual innocence, not mere legal insufficiency.   Bousley v. United States, 523 U.S. 614,

21

623 (1998).  To be credible, a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup, 513 U.S. at 324.  Stenberg makes no such showing.  In fact, and as discussed above, the evidence of Stenberg's guilt is quite strong, and he offers nothing new to cast doubt on the accuracy of the verdict.

Accordingly, Stenberg's ineffective assistance of counsel claim is barred by his procedural default.

### F.  Self-Representation at Trial

Stenberg's final claim asserts that the trial court failed to advise him that he had an option to represent himself with the assistance of stand-by counsel.  The claim is similar to a claim raised by Stenberg's in his supplemental brief on direct appeal that the trial court erroneously denied his motion to allow him to proceed as co-counsel with his attorney.  The Michigan Court of Appeals denied the previous version of the claim on the merits.  Stenberg, 2010 WL 3984639, *7.

Even assuming the new version of the claim is similar enough to the claim raised on direct appeal to be exhausted, it cannot form the basis for granting habeas relief because Stenberg had no federal constitutional right to stand-by counsel.  In Faretta v. California, the Supreme Court held that implicit in the Sixth Amendment right to the assistance of counsel is a right to self-representation. 422 U.S. 806, 818–832 (1975). Stenberg does not assert that he was denied the right to represent himself. In state court he argued that he was denied the right to act as co-counsel while retaining the assistance of his trial attorney.  And here he seems to argue that he had a right to have the court give him the option of retaining his attorney as stand-by counsel.  While the Faretta Court indicated that "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused," id. at 834 n.46 (emphasis added), it did not require it.  See McKaskle

v. Wiggins, 465 U.S. 168, 183 (1984) ("Faretta does not require a trial judge to permit 'hybrid' representation of the type [the defendant] was actually allowed."). Accordingly, the trial court here was not obligated as a matter of federal law to advise Stenberg of the possible option to represent himself and proceed with stand-by counsel. The claim is without merit.

### G.  Certificate of Appealability and In Forma Pauperis on Appeal

Before Stenberg may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Stenberg must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Stenberg's claims. The Court will therefore deny a certificate of appealability.

The Court also finds that because any appeal of this order would be frivolous, permission to appeal in forma pauperis will likewise be denied. Fed. R. App. P. 24(a).

### III.    CONCLUSION

For the reasons stated, the Court:(i) denies with prejudice the amended petition for a writ of habeas corpus; (ii) denies a certificate of appealability; and (iii) denies permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: March 12, 2026                          s/Mark A. Goldsmith
Detroit, Michigan                              MARK A. GOLDSMITH
                                               United States District Judge

24

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 12, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager